**Hollis BOATSWAIN, Petitioner–Appellant,**

**v.**

**Alberto GONZALES,[1] Attorney General of the United States, Respondent–Appellee.**

**Docket No. 03–2524–PR.**

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 2004.

Decided June 30, 2005.

---

1. Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States. *See* Fed. R.App. P. 43(c)(2).

**414**

Navin Pant and Naomi Sunshine, legal interns (Nancy Morawetz, Sejal Zota, and Kevin Lapp, on the brief), Washington Square Legal Services, Inc., New York, NY, for Appellant.

Steven Kim, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York; F. Franklin Amanat and Varuni Nelson, Assistant United States Attorneys, on the brief), Brooklyn, NY, for Appellee.

Before: WALKER, Chief Judge, POOLER and WESLEY, Circuit Judges.

WALKER, Chief Judge.

Petitioner–Appellant Hollis Boatswain appeals from a June 12, 2003, decision of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*), affirming an order of the Immigration and Naturalization Service ("INS") that denied Boatswain's application for naturalization as a U.S. citizen. As an alien who served in the U.S. Army during the Vietnam War, Boatswain is entitled to the benefits of Immigration and Nationality Act ("INA") § 329, 8 U.S.C. § 1440, a statute that relaxes the naturalization requirements for persons who have served in the U.S. military on active-duty status during wartime. On appeal, Boatswain argues that the district court erred in applying INA § 101(f)(8), 8 U.S.C. § 1101(f)(8), which precludes the finding of "good moral character" necessary for naturalization where an individual has been convicted of an "aggravated felony" (as defined by INA § 101(a)(43), 8 U.S.C. § 1101(a)(43)), to 8 U.S.C. § 1440. Because we find that the plain meaning of § 1101(f)(8) bars applicants for naturalization under § 1440 from demonstrating good moral character if they have been convicted of an aggravated felony, we affirm the judgment of the district court.

## BACKGROUND

In 1969, Boatswain arrived in the United States from Trinidad; in 1974, he became a lawful permanent resident. In 1975, during the Vietnam War, he voluntarily enlisted and served in the U.S. Army. The following year he was honorably discharged for medical reasons. Between 1982 and 1998, Boatswain was convicted seventeen times in New York state court for misdemeanor sale of marijuana, eight times for misdemeanor possession of marijuana, and seven times for misdemeanor theft of services. The most serious sen-

tence he received for any one of these convictions was eight months' imprisonment. In 1998, Boatswain pled guilty in federal court to healthcare fraud in violation of 18 U.S.C. § 1347; he was sentenced to one year in prison and ordered to pay restitution of $15,000.

In July 1999, the INS commenced removal proceedings against Boatswain, charging him as removable as a result of his healthcare fraud conviction. In September 1999, while in INS detention, Boatswain applied for naturalization under 8 U.S.C. § 1440. In November 1999, following a hearing, an Immigration Judge ("IJ") ordered Boatswain removed, and in June 2000, the Board of Immigration Appeals ("BIA") dismissed Boatswain's appeal of the IJ's removal order. In September 2000, however, the district court stayed that removal order until the INS had resolved Boatswain's still-pending application for naturalization. In February 2002, the INS denied Boatswain's application. In April and May 2002, the district court conducted a two-day hearing pursuant to 8 U.S.C. § 1421(c) to review the INS's denial of Boatswain's application.[2]

In its decision, the district court first found that § 1440 requires applicants for naturalization under its terms to demonstrate good moral character. *See Boatswain v. Ashcroft,* 267 F.Supp.2d 377, 386–87 (E.D.N.Y.2003). It then held that the good moral character bar found in 8 U.S.C. § 1101(f)(8), which precludes a finding of good moral character where an individual has been convicted of an "aggravated felony," applies to such applicants. Because Boatswain had indisputably been convicted of an "aggravated felony" as that term is defined in 8 U.S.C. § 1101(a)(43)(B),[3] the court concluded that Boatswain was "barred under § 1101(f)(8) from naturalizing." *Id.* at 387.[4] This appeal followed.

## DISCUSSION

Soon after the district court issued its opinion, but prior to briefing in this case, we decided *Nolan v. Holmes,* 334 F.3d 189 (2d Cir.2003). *Nolan,* as Boatswain concedes, resolved the threshold issue raised in the district court by holding that applicants for naturalization under 8 U.S.C. § 1440 must, consistent with the INS's interpretation of the statute, demonstrate good moral character. 334 F.3d at 201–02. *Nolan,* however, expressly left open the other issue in Boatswain's case: whether the statutory bar for aggravated felons contained in § 1101(f)(8) applies to war-

---

2. Section 1421(c) provides: "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

3. As the district court noted, the parties disagree as to whether Boatswain's healthcare fraud conviction is an aggravated felony under the statute. Boatswain, however, did not dispute below (nor does he on appeal) the district court's finding that his post-1990 drug convictions under New York state law for the Criminal Sale of Marijuana in the Fourth Degree were aggravated felonies under 8 U.S.C. § 1101(a)(43)(B).

4. The district court went on to hold that even if § 1101(f)(8) did not operate as a statutory bar, Boatswain "would, nonetheless, not be entitled to naturalize because he has failed to demonstrate his good moral character." *Id.* at 387–88. Summarizing its findings from the two-day hearing, the court wrote: "Despite his numerous convictions, Boatswain time and again returned to selling drugs. The Court is not satisfied that he has now, at this late date, reformed of character." *Id.* at 388.

time veterans seeking naturalization under § 1440. *See id.* at 203. We now address this question.

### I. Relevant Statutes

There are three statutory provisions directly bearing on Boatswain's appeal. The general naturalization statute, 8 U.S.C. § 1427, sets forth various conditions with which an individual must comply in order to be eligible for naturalization. Of particular relevance to this case is § 1427(a), which, after establishing a required period of lawful permanent residence in the United States of five years, *see* 8 U.S.C. § 1427(a)(1), provides that

> [no person except as otherwise provided in this title shall be naturalized unless such applicant] *during all the periods referred to in this subsection has been and still is a person of good moral character,* attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a)(3) (emphasis added). Thus, any person applying for citizenship under § 1427 must be a lawful permanent resident of the United States for five years prior to application, and must further demonstrate that during that period he "has been and still is a person of good moral character ...." *Id.*

The statute under which Boatswain seeks naturalization is 8 U.S.C. § 1440. Section 1440 relaxes the general regime established in § 1427 when the applicant for naturalization is a person, like Boatswain, who "has served honorably ... in an active-duty status" in the U.S. military during armed conflict with a hostile foreign force. 8 U.S.C. § 1440(a). Rather than establishing specific conditions under which such persons can be naturalized, however, § 1440 sets forth a list of exceptions to the conditions listed in § 1427.

*See* 8 U.S.C. § 1440(b). Among these is § 1440(b)(2), which provides that "no period of residence or specified period of physical presence within the United States or any State or district of the Service in the United States shall be required[.]" The exceptions in § 1440 make no mention of § 1427's good moral character requirement.

Finally, at the heart of this appeal is 8 U.S.C. § 1101(f). This provision, in a limited number of circumstances, erects a *per se* statutory bar to a finding of good moral character under chapter twelve of title eight of the U.S.Code, which contains the laws on immigration and naturalization. The introductory paragraph of § 1101(f) reads as follows:

> For the purposes of this chapter—No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ....

Among the conditions listed thereafter is § 1101(f)(8): "one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)."

### II. The Relationship between §§ 1101(f)(8) and 1440

■ As already noted, there is no longer any question (as there was at the time of the district court's decision) that § 1440 contains a good moral character requirement. While it is true that our court in *Nolan,* 334 F.3d at 197, acknowledged that "the precise interplay between [sections 1440 and 1427] is hardly clear," we concluded that the INS's interpretation of § 1440 as requiring a demonstration of good moral character was reasonable, and thus entitled to deference under *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81

L.Ed.2d 694 (1984). That interpretation is set forth in an INS regulation, 8 C.F.R. § 329.2, entitled "Eligibility," which explains in more detail what § 1440 requires of wartime veterans before they can be naturalized. Specifically, section 329.2(d) provides that

> [an applicant must establish that he or she] [h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States . . . .

After a careful review of the legislative history of § 1440 and other provisions of the INA, we observed that this history supported the INS's interpretation as codified in section 329.2(d) insofar as the good moral character requirement is concerned.[5] *Nolan,* 334 F.3d at 198–201. The rule in *Nolan,* then, is that applicants under § 1440 must demonstrate good moral character if they hope to be naturalized as U.S. citizens.

Boatswain argues in this appeal that § 1101(f)'s reference to a *"period* for which good moral character is required to be established" (emphasis added) suggests that the provision only pertains to those sections of chapter twelve that specifically designate a "period" during which good moral character must be shown. He claims that because § 1440 eliminates the period-of-residence requirement for applicants under its terms, we must also read it as eliminating the requirement that good moral character be shown during a specific period. All that must be demonstrated under § 1440, in Boatswain's view, is that an applicant "is" of good moral character.

Thus, he urges, the section is not subject to § 1101(f)—or, at least, there is ambiguity on that score. "It is simply not clear," Boatswain asserts, "that 'is' of good moral character constitutes a period that would trigger the aggravated felony bar [under § 1101(f)], nor is it clear that Congress intended an implicit good moral character requirement to trigger a *per se,* permanent bar to naturalization for wartime veterans." (Appellant's Br. at 24). Faced with this purported ambiguity in the statutory regime, we are asked to draw on jurisprudential doctrines that counsel for interpretation in favor of non-citizens and veterans, *see, e.g., INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (noting "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); *King v. St. Vincent's Hosp.,* 502 U.S. 215, 220 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (recognizing "canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor"), and to hold that § 1440's good moral character requirement is beyond the reach of § 1101(f)(8)'s permanent bar to naturalization.

■ Having carefully reviewed the language and context of the provisions in question, we hold that § 1101(f)'s plain meaning applies to a finding of good moral character under § 1440, just as it does to such a finding under § 1427. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)

---

5. The *Nolan* court did not intimate a view as to whether the INS's designation of a one-year period during which good moral charac-

ter must be demonstrated was a reasonable interpretation of the statute.

(internal quotation marks and citations omitted). Section 1101(f) comes at the outset of chapter twelve and establishes an important restriction on the definition of "good moral character," as the term is used throughout that chapter. Section 1101(f) does not say that we are to apply it to some parts of chapter twelve but not others, although such a limitation, had it been intended, would surely have warranted express pronouncement and could have been easily included. Taken in context, there is no reason to believe that § 1101(f)'s reference to "the period for which good moral character is required to be established," is anything more than an acknowledgment that the various provisions of chapter twelve attach different chronological conditions to the good moral character requirement contained in each. Thus, even accepting Boatswain's argument that § 1440 requires an applicant to demonstrate good moral character only at the moment of application (an assumption at odds with the INS regulation interpreting the provision to require a good moral character showing for the year prior to application, *see* 8 C.F.R. § 329.2), the corresponding "period," by any natural reading of the statute, would be that particular moment in time.

With one meaning so readily apparent on the face of § 1101(f), we reject Boatswain's assertion that the statute is ambiguous. We therefore find that the statutory bars contained in 8 U.S.C. § 1101(f), including § 1101(f)(8)'s "aggravated felony" bar, apply to the good moral character requirement of 8 U.S.C. § 1440. Under this reading, Boatswain is barred by § 1101(f) because Boatswain, "during the period for which good moral character is required to be established, is, or was ... one who at any time has been convicted of an aggravated felony."

### III. Retroactive Legal Effect

■ Boatswain argues in the alternative that we cannot apply the "aggravated felony" bar to him because to do so would create a "retroactive legal effect," and there is no clear indication in the statute that such an effect was intended. *See Landgraf v. USI Film Prod.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (recognizing presumption against application of statute to conduct pre-dating its enactment where it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). He points out that when he enlisted in the military in 1975, § 1101(f)(8) did not bar individuals who had committed an "aggravated felony" from demonstrating good moral character; at the time, the statutory bar contained in that provision applied only to "one who at any time has been convicted of the crime of murder."[6] Boatswain concludes from this that "[e]ven if the [§ 1101(f)] bars apply to [§ 1440] applicants ... they should not be applied where they change the terms of the bargain between the government and a person ... who honorably concluded his wartime military service." (Appellant's Br. at 41–42).

■ " 'A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law.' " *Rankine v. Reno,* 319 F.3d 93, 98 (2d Cir.2003) (quoting *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483; alteration from original omitted). "Rather, the inquiry demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (internal quotation marks, ellipses, and citation omitted).

---

**6.** Section 1101(f)(8) was amended to its present form in 1990. *See* Immigration Act of 1990, Pub. L. No. 101–649, § 509, 104 Stat. 4978, 5051 (1990).

In *Rankine*, we emphasized that " 'the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.' " *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (internal quotation marks omitted)). Accordingly, we looked for some indication of a *quid pro quo*, or reasoned exchange, wherein the individual whose settled expectations were in question relied on a potential benefit in structuring his conduct. *See id.* at 99–100.

Boatswain cannot plausibly contend that he entered military service in 1975 with the expectation that following his discharge he could commit an aggravated felony (short of murder) and still be permitted to become a U.S. citizen. Such a "benefit"—if it may be called that—is far too remote to constitute a "settled expectation" in this context. We conclude that § 1101(f)(8) does not have a "retroactive" effect with respect to Boatswain and may therefore be applied to bar him from naturalization under 8 U.S.C. § 1440, with or without a clear indication of its temporal reach.

Having found that Boatswain is barred by 8 U.S.C. § 1101(f)(8) from demonstrating the good moral character requisite to naturalization under 8 U.S.C. § 1440, we do not address the district court's conclusion that Boatswain could not establish good moral character even if § 1101(f)(8) did not apply.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

* Pursuant to Rule 12(a), F.R.A.P.