Kai Tung CHAN, Plaintiff–Appellant,

v.

Mary Ann GANTNER, Interim District Director, United States Citizenship and Immigration Services, Defendants–Appellees.

Docket No. 05–4573–CV.

United States Court of Appeals, Second Circuit.

Argued: Aug. 9, 2006.

Decided: Sept. 20, 2006.

Michael P. DiRaimondo, (Marialaina L. Masi; Mary Elizabeth Delli–Pizzi, of counsel) DiRaimondo & Masi LLP, Melville, N.Y., for Plaintiff–Appellant.

F. James Loprest, Jr., Special Assistant United States Attorney, (Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief; Kathy S. Marks, Assistant United States Attorney, of counsel) New York, N.Y., for Defendants–Appellees.

Before: STRAUB, POOLER, and SACK, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, Kai Tung Chan, appeals from a judgment entered on June 28, 2005, in the Southern District of New York (John E. Sprizzo, *Judge* ), upholding a decision by the Citizenship and Immigration Services (CIS) finding Chan ineligible for naturalization under 8 U.S.C. § 1427 because of a 1993 conviction for conspiracy to smuggle aliens, an aggravated felony under 8 U.S.C. § 1101(a)(43)(N), (U). We hold that: (1) the amendments to the Immigration and Nationality Act (INA) that expanded the class of aggravated felonies to include Chan's offense apply retroactively; (2) Chan is, therefore, statutorily precluded from establishing good moral character for the purposes of the INA; (3) Chan's waiver of deportation does not remove his conviction from consideration in subsequent immigration proceedings; and (4) Chan received the hearing he was entitled to under 8 U.S.C. § 1421(c).

## BACKGROUND

### I. Statutory Framework

As part of the Homeland Security Act of 2002, the INS was divided into two different bureaus: the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services. *See Brown v. Ashcroft,* 360 F.3d 346, 348 n. 1 (2d Cir.2004). The Bureau of U.S. Citizenship and Immigration Services (CIS) handles applications for U.S. citizenship.

Before October 1, 1991, applicants for citizenship applied for naturalization directly in the United States district court. *See Tutun v. United States,* 270 U.S. 568, 575–76, 46 S.Ct. 425, 70 L.Ed. 738 (1926). The INS would investigate the applicant and supply the court with a report and non-binding recommendations. *See* 8 C.F.R. § 335.11 (1990). In response to backlogs in the district courts, the Immigration Act of 1990, Pub.L. No. 101–649, Title IV, 104 Stat. 4978, 5038–48 (Nov. 29 1990) (the "1990 Amendments"), removed jurisdiction from the district courts and placed "sole authority to naturalize persons as citizens of the United States [with] the Attorney General." INA § 310(a), 8 U.S.C. § 1421(a). "A central purpose of the statute was to reduce the waiting time for naturalization applicants." *United States v. Hovsepian,* 359 F.3d 1144, 1163 (9th Cir.2004) (en banc) (citing Naturalization Amendments of 1989, 135 Cong. Rec. H4539–02, H4542). Federal statutes and regulations provide procedures for applicants to contest denials before naturalization officers within the CIS. *See* 8 U.S.C. §§ 1446–47; 8 C.F.R. §§ 335.1, 335.2, 336.2; *see also Aparicio v. Blakeway,* 302 F.3d 437, 440 (5th Cir.2002) (describing the application process).

The 1990 Amendments also provided for *de novo* judicial review in the United

States district courts of the CIS's denials of applications for naturalization. *See* INA § 310(c); 8 U.S.C. § 1421(c). As the Tenth Circuit has noted, "[t]his grant of authority is unusual in its scope—rarely does a district court review an agency decision de novo and make its own findings of fact." *Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir.2000). "[E]ven if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions." *Hovsepian,* 359 F.3d at 1162 (emphasis omitted); *see also Boatswain v. Gonzales,* 414 F.3d 413, 415 n. 2 (2d Cir. 2005); *Aparicio,* 302 F.3d at 445 ("Judicial review of naturalization denials is always available and is *de novo,* and is not limited to any administrative record but rather may be on facts established in and found by the district court.").

## II. Factual Background

Chan, a native and citizen of the People's Republic of China, entered the United States on December 20, 1975, with a visitor's visa issued by the United States Consulate in Hong Kong. In June 1985, Chan married a United States citizen, and in October of that year, Chan was granted lawful permanent resident status.

On December 11, 1992, Chan was named in a four-count indictment charging him and another with smuggling aliens into the United States and related offenses, in violation of 18 U.S.C. §§ 2, 371, 1324(a)(2). Chan pleaded guilty to one count of conspiracy to smuggle aliens, in violation of 18 U.S.C. § 371, and on October 8, 1993, was sentenced to five years of probation and fined $5,000. Soon thereafter, the INS charged Chan with deportability from the United States pursuant to former INA § 241(a)(1)(E)(i) (now recodified as INA § 237(a)(1)(E)(i)). *See* 8 U.S.C. § 1227(a)(1)(E)(i). Because Chan had accepted responsibility for his offense and because his deportation would cause his family hardship, the Immigration Judge (IJ) granted him a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996) ("section 212(c) waiver").[1] Thereafter, Chan completed his probation and paid the fine without incident.

On March 20, 2002, Chan submitted an application for naturalization acknowledging his past conviction for conspiracy to smuggle aliens. Chan took and passed the naturalization exam. The INS, however, reserved decision pending a request for Chan's criminal records from the Federal Bureau of Investigation. On May 2, 2003, defendant-appellee, CIS Interim District Director Mary Ann Gantner, denied Chan's application for naturalization due to his inability to establish good moral character as required by 8 C.F.R. § 316.10.

On May 23, 2003, Chan filed a timely appeal of the denial of his application, under INA § 336, 8 U.S.C. § 1447, claiming that (1) his 1993 conviction had occurred outside the five-year statutory period prior to his filing for naturalization for establishing good moral character; and (2) the section 212(c) waiver of deportation waived the conviction for all immigration purposes. On October 16, 2003, Gantner denied the appeal because Chan, having been convicted of an "aggravated felony," was

---

1. Section 212(c) was later repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) section 304(b), Pub.L. 104–208, 110 Stat. 3009–597, and replaced with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens, *see id.,* at 3009–594 (creating 8 U.S.C. § 1229b). In this opinion, we will refer to Chan's waiver as one under INA § 212.

unable to establish the good moral character necessary under 8 C.F.R. § 316.10.

Following the denial of his appeal, Chan sought *de novo* review of his application in the United States District Court for the Southern District of New York under INA § 310, 8 U.S.C. § 1421(c). Shortly thereafter, the government moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). The District Court granted the motion, holding that (1) Chan's conspiracy offense constituted an aggravated felony; (2) 8 U.S.C. § 1101(f)(8) prevented Chan from establishing good moral character even though his conviction occurred more than five years before he filed his application for naturalization; (3) provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) deeming Chan's conviction an aggravated felony applied retroactively; and (4) Chan's receipt of a section 212(c) waiver did not preclude the CIS from considering his conviction when determining good moral character. *See Kai Tung Chan v. Gantner,* 374 F.Supp.2d 363, 365–68 (S.D.N.Y. 2005). Chan filed a timely notice of appeal of the District Court's decision.

## DISCUSSION

### I. Standard of Review

Our review of a district court's grant of summary judgment is *de novo. Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir. 2001). To obtain relief, the moving party must show that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we "resolve all ambiguities and draw all inferences in favor of the non-moving party." *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). The facts of this case are not in dispute. The relevant question is whether as a matter of statutory construction Chan is precluded from establishing good moral character.

### II. Retroactive Application of the Definition of Aggravated Felony

No alien may become a United States citizen unless he establishes the following, subject to certain exceptions not at issue:

(1) immediately preceding the date of filing his application for naturalization [he] has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and ... has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2)[he] has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection [he] has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a). Title 8, section 1101(f)(8), precludes from establishing "good moral character" those "who, during the period for which good moral character is required to be established, is, or was ... one who at any time has been convicted of an aggravated felony." The term "aggravated felony" as used in section 1101(f)(8) is defined in 8 U.S.C. § 1101(a)(43). At the time of Chan's conviction, conspiracy to engage in alien smuggling was not an aggravated felony under the INA. *See* 8 U.S.C. § 1101(a)(43) (1994). The current definition of the term "aggravated felo-

ny"—which also was the version in effect when Chan filed his naturalization petition—includes:

> [A]n offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter.

8 U.S.C. § 1101(a)(43)(N). Additionally, section 1101(a)(43) provides that attempts and conspiracies to commit offenses constitute aggravated felonies if the underlying substantive offense is included within the statutory definition.[2] *See* 8 U.S.C. § 1101(a)(43)(U). Further, Congress in 1996 passed IIRIRA, which states that the current definition of "aggravated felony" is to be used "regardless of whether the conviction" for the offense included in the definition "was entered before, on, or after" the September 30, 1996 effective date of IIRIRA. *See* 8 U.S.C § 1101(a)(43).

■ Chan argues that (1) the new definition of "aggravated felony" cannot be applied to him because it did not exist when he was convicted; and (2) retroactive application of the new definition to him would violate the Ex Post Facto Clause of the Constitution. Both arguments are entirely lacking in merit. First, the denial of citizenship is a civil proceeding, *see Abela v. Gustafson,* 888 F.2d 1258, 1262 (9th Cir.1989), to which the Ex Post Facto Clause does not apply, *see Guaylupo-Moya v. Gonzales,* 423 F.3d 121, 131–32 (2d Cir.2005) (holding that the application of IIRIRA's expansion of "aggravated felony" does not offend the Ex Post Facto

Clause in deportation proceedings because they are civil in nature); *Kuhali v. Reno,* 266 F.3d 93, 111–12 (2d Cir.2001) (similar). Second, statutes may and should be retroactively applied when the statute at issue clearly indicates that it is intended to be retroactive. *See Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Congress made clear its intent to apply the expanded definition of aggravated felony in the same statutory section that created the new definition. *See* 8 U.S.C. § 1101(a)(43) (stating that an offense is an aggravated felony if contained in the current version of section 1101(a)(43), "regardless of whether the conviction was entered before, on, or after September 30, 1996"); *see also INS v. St. Cyr,* 533 U.S. 289, 318–19, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that the aggravated felony definition is unambiguously retroactive); *Kuhali,* 266 F.3d at 110–11 (holding that the aggravated felony definitions have retroactive application). Furthermore, because 8 U.S.C. § 1101(f)(8) incorporate 8 U.S.C. § 1101(a)(43) by reference, it is clear that Congress intended that the aggravated felony definitions would apply retroactively to bar persons convicted of those crimes from establishing the good moral character necessary for naturalization.

## III. The Statutory Bar to Establishing Good Moral Character

■ Chan argues that, even if the definition of "aggravated felony" applies retroactively to include his conviction, the District Court erred in holding that he cannot establish that he is a person of good moral character. Specifically, he asserts that 8 U.S.C. § 1101(f) is ambiguous because the introductory language referring to "the pe-

---

**2.** We note that this section disposes of Chan's frivolous argument that his conviction for conspiracy is not included within 8 U.S.C. § 1101(a)(43)'s definition of an aggravated felony.

riod for which good moral character is required to be established" contradicts the reference in section 1101(f)(8) to "one who *at any time* has been convicted of an aggravated felony." § 1101(f)(8) (emphasis added). He claims that the relevant "period" for establishing good moral character in naturalization applications is the five-year residence requirement listed in section 1427(a)(1), and because his conviction occurred prior to that period, it is not relevant to the determination of his character. We find Chan's argument unpersuasive.

As we held in *Boatswain v. Gonzales*, an applicant convicted of an aggravated felony is precluded under 8 U.S.C. § 1101(f)(8) from establishing good moral character regardless of when the conviction occurred. *Boatswain v. Gonzales*, 414 F.3d 413, 418 (2d Cir.2005). Contrary to Chan's interpretation, section 1101(f)'s reference to "the period for which good moral character is required to be established" is only an "acknowledgment that the various provisions of chapter twelve attach different chronological conditions to the good moral character requirement contained in each." *Boatswain*, 414 F.3d at 418. Therefore, "during the period for which good moral character is required,"—i.e. "the five years immediately preceding the date of filing his application," § 1427(a)—Chan remained "one who at any time has been convicted of an aggravated felony." § 1101(f). It is particularly noteworthy, in this regard, that section 1101(f)(5) bars only "one who has been convicted of two or more gambling offenses committed *during such period*" from establishing good moral character. § 1101(f)(5) (emphasis added). In contrast, "one who at any time has been convicted of an aggravated felony" cannot establish good moral character. § 1101(f)(8). Although Chan committed his aggravated felony more than five years in the past, he remains one who has committed an aggravated felony, and therefore, he may not receive naturalization.

## IV. INA § 212(c) Waiver

■ Chan next contends that his section 212(c) waiver "waives the use of the conviction for immigration purposes" and precludes the Attorney General or the District Court from finding that he lacks good moral character based on the waived conviction.[3] Appellant's Br. at 20. We agree with the District Court that no authority supports the proposition that the government is foreclosed by a waiver of deportation from considering a conviction when determining the unrelated question of fitness for naturalization. As discussed by

3. Chan contends that the "law of the case" doctrine required the District Court to consider the effect of the section 212(c) waiver in its consideration of his good moral character. The law of the case doctrine, however, does not apply to this case. The doctrine provides that a court of appeals will "usually adhere to its own decision at an earlier stage of the litigation." *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir.2000) (internal quotation marks omitted) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). The doctrine also describes the duty of the district court on remand: "When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *Id.* at 40 (internal quotation marks omitted) (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977)). This doctrine simply has no application here. The decision of the IJ concerning section 212(c) relief has no binding force upon the District Court, which was required to examine the denial of citizenship to Chan *de novo*. *See* 8 U.S.C. § 1421(c). Moreover, the District Court considered the significance of the section 212(c) waiver and, as discussed below, determined that it did not expunge Chan's conviction for purposes of his eligibility for citizenship. *See Kai Tung Chan v. Gantner*, 374 F.Supp.2d 363, 367–68 (S.D.N.Y.2005).

the BIA in *Matter of Balderas,* 20 I. & N. Dec. 389 (BIA 1991), it is entirely appropriate for the government to consider a conviction even if the alien has subsequently received a section 212(c) waiver because:

> section 212(c) merely provides that an alien may be admitted to or, in the case of deportation proceedings, allowed to remain in the United States despite a finding of excludability or deportability. Thus, when section 212(c) relief is granted, the Attorney General does not issue a pardon or expungement of the conviction itself.

*Id.* at 391. The Third, Fifth, and Ninth Circuits have followed *Balderas* and held that a waiver under section 212(c) does not preclude the INS or the courts from relying on the underlying offense to bar other forms of immigration relief or benefits. *See Rodriguez–Munoz v. Gonzales,* 419 F.3d 245, 248 (3d Cir.2005); *Molenda v. INS,* 998 F.2d 291, 294–95 (5th Cir.1993); *Molina–Amezcua v. INS,* 6 F.3d 646, 647 (9th Cir.1993).

We find the reasoning of the BIA and the other courts of appeals persuasive. In the present case, the IJ granted Chan relief under section 212(c) because of the hardship that his deportation would cause his family outweighed his crime and not because of his good moral character. Indeed, a finding of "good moral character," was not a statutory prerequisite or necessarily a consideration for relief under section 212(c). *See* 8 U.S.C. § 1182(c) (1994). The decision of whether to award section 212(c) relief involved only a balancing of the "adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of [a section 212(c) waiver] appear[d] in the best interests of this country." *In re Marin,* 16 I. & N. Dec. 581, 584 (BIA 1978); *see also Doug-*

*las v. INS,* 28 F.3d 241, 243–44 (2d Cir. 1994). Accordingly, we find no error in the District Court's holding that Chan failed to meet the statutory requirements for establishing good moral character.

## V. District Court Review Under 8 U.S.C. § 1421(c)

 Chan's final argument is that the District Court committed a procedural error by considering and granting the government's motion for summary judgment. He contends that section 1421(c)—which requires the District Court to review the denial of naturalization "de novo," to "make its own findings of fact and conclusions of law," and "at the request of the petitioner, [to] conduct a hearing *de novo* on the application"—is inconsistent with motions for summary judgment as set forth in Rule 56. We find his argument unpersuasive.

The Federal Rules of Civil Procedure "are applicable to proceedings for admission to citizenship ... to the extent that the practice in such proceedings is not set forth in statutes of the United States ... and has heretofore conformed to the practice in civil actions." Fed.R.Civ.P. 81(a)(2). That summary judgment is not explicitly mentioned in 8 U.S.C. § 1421(c) is not determinative. Summary Judgment under Rule 56 is available unless, under the terms of Rule 81(a)(2): (1) A statute "set[s] forth" an alternative practice, or (2) review of citizenship denials has not "heretofore conformed to the practice in civil actions."

Chan argues that the phrase "hearing *de novo* " in section 1421(c) implies a bench trial or evidentiary hearing and thus sets forth an alternative practice. We disagree. The term "hearing" has a "host of meanings" that encompass a wide variety of procedures. *United States v. Florida E. Coast Railway Co.,* 410 U.S. 224, 239,

93 S.Ct. 810, 35 L.Ed.2d 223 (1973). Absent some otherwise expressed Congressional intent, the mere use of the word "hearing" in a statute does not mandate an evidentiary hearing be held. *See J.D. ex. rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 68 (2d Cir.2000) (holding that the use of the phrase "impartial due process hearing" in the Individuals with Disabilities Education Act did not require an evidentiary hearing where there were no genuine issues of material fact). Nor does the phrase *"de novo"* indicate anything other than the district court's standard of review. *See Aparicio v. Blakeway*, 302 F.3d 437, 440 (5th Cir.2002); *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir.2000).

On Chan's interpretation of section 1421(c), moreover, district courts are required to hold bench trials even when there are no disputed issues of material fact. We think that result absurd. His reading thus "signals an erroneous construction." *KLC, Inc. v. Trayner*, 426 F.3d 172, 176 (2d Cir.2005). And there is no indication that Congress intended to waste judicial resources. We therefore conclude that no statute "set[s] forth" an alternative practice for review of citizenship denials such that Rule 56 is inapplicable in those proceedings.

Finally, under the second part of the test, the practice in review of citizenship denials has "heretofore conformed to the practice in civil actions." Fed.R.Civ.P. 81(a)(2). The application of the Federal Rules of Civil Procedure is the norm under the current naturalization provision, *see e.g., De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1044, 1047 (9th Cir.2004); *Zaranska v. U.S. Dep't of Homeland Security*, 400 F.Supp.2d 500, 505 (E.D.N.Y.2005); *Farghaly v. Frazier*, 404 F.Supp.2d 1125, 1127 (D.Minn.2005); *Puello v. Bureau of Citizenship and Immigration Services*, 418 F.Supp.2d 436, 437 (S.D.N.Y.2005);

*Laryea v. United States*, 300 F.Supp.2d 404, 407 (E.D.Va.2004), and was the norm under the prior law, under which the district courts had sole authority for determining eligibility for naturalization, *see Tutun v. United States*, 270 U.S. 568, 577, 46 S.Ct. 425, 70 L.Ed. 738 (1926) (stating that petitions for naturalization were "instituted and ... conducted ... according to the regular course of judicial procedure").

Chan received the hearing required by section 1421(c). Because there was no genuine issue of material fact, the District Court properly entered summary judgment to dispose of the case.

In concluding that the statutory bar to establishing good moral character makes summary judgment appropriate in this case, we do not express an opinion as to the propriety of summary judgment for the government in other cases where such a statutory bar is absent. *Cf. Santamaria–Ames v. INS*, 104 F.3d 1127, 1132–33 (9th Cir.1996); *Asamoah v. U.S. INS*, 2004 WL 736911, at *5 (S.D.N.Y. Apr.5, 2004), 2004 U.S. Dist. LEXIS 5735, *18; *Gizzo v. INS*, 2003 WL 22110278, at *3 (S.D.N.Y. Sept. 10, 2003), 2003 U.S. Dist LEXIS 15912, *8–*9.

## CONCLUSION

For the forgoing reasons, the decision of the District Court is AFFIRMED.