HAMILTON, Senior Circuit Judge,
dissenting:
In my view, the district court did not err in dismissing the appellants’ respective petitions for § 1447(b) hearings in the district court. See 8 U.S.C. § 1447(b). Once the Bureau of Citizenship and Immigration Services denied the appellants’ applications for naturalization, the appellants’ respective pending actions (based upon their § 1447(b) petitions) became moot for lack of a live case or controversy, thus depriving the district court of subject matter jurisdiction. Accordingly, I dissent.
I.
Prior to October 1, 1991, an alien seeking naturalized citizenship applied for naturalization directly in the district court since district courts had exclusive jurisdiction to naturalize persons as citizens of the United States. See 8 U.S.C. § 1421(a) (1990); Immigration Act of 1990, Pub.L. No. 101-649, Title IV, §§ 401, 408(a)(1), 104 Stat. 5038, 5047 (Nov. 29, 1990); Chan v. Gantner, 464 F.3d 289, 290 (2d Cir.2006). To aid district courts in this process, the Immigration and Naturalization Service (INS) investigated naturalization applicants and supplied district courts with a report and nonbinding recommendation. See 8 C.F.R. § 335.11 (1990). See also Chan, 464 F.3d at 290.
In response to tremendous backlogs of naturalization applications in the district courts, the Immigration Act of 1990 amended the Immigration and Nationality Act of 1952 (the INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 et seq., to provide that “[t]he sole authority to naturalize persons as citizens of the United States is *389 conferred upon the Attorney General.” 8 U.S.C. § 1421(a), Pub.L. No. 101-649, Title IV, § 401, 104 Stat. 5038 (1990) (amending INA to change naturalization from a judicial process to an administrative process beginning October 1, 1991). “A central purpose of the statute was to reduce the waiting time for naturalization applicants.” United States v. Hovsepian, 359 F.3d 1144, 1163 (9th Cir.2004) (en banc); see also 135 Cong. Rec. H4539-02 (Statement of Rep. Morrison of Connecticut) (indicating purpose of statute was to remedy “the problem of long backlogs in moving through the naturalization process once the time period for naturalization has been accomplished and the various requirements of naturalization have been met”); Arnold Rochvarg, Report to the Administrative Conference — Reforming The Administrative Naturalization Process: Reducing Delays While Increasing Fairness, 9 Geo. Immigr. L.J. 397, 398-99 (1995) (“The major reason for the 1991 change to an administrative naturalization process from a judicial one was the backlog of naturalization cases in many courts. This created unreasonable delays in eligible applicants becoming citizens.”). Thus, post October 1, 1991, an individual seeking naturalization must file an application with the Attorney General, 8 U.S.C. § 1445, and an investigation and examination is conducted by the Bureau of Citizenship and Immigration Services pursuant to 8 U.S.C. § 1446.[1] In relevant part, § 1446 provides:
(a) Waiver
Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization. The Attorney General may, in his discretion, waive a personal investigation in an individual case or in such cases or classes of cases as may be designated by him.
(b) Conduct of examinations; authority of designees; record
The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpoena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States; and any such court may, in the event of neglect or refusal to respond to a subpoena issued by any such employee so designated or refusal to testify before such employee so designated issue an order requiring such person to appear before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and *390 any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 1447(a) of this title. Any such employee shall, at the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title.
(d) Determination to grant or deny application
The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor.
Id. § 1446(a)-(d).
Additionally, if a naturalization applicant “is a native, citizen, subject, or denizen of any country, state, or sovereignty with which the United States is at war,” i.e., an alien enemy, 8 U.S.C. § 1442(a) requires the Attorney General to conduct a special examination to establish the applicant’s loyalty to the United States. As a practical matter, the CIS, via federal regulation, is charged with carrying out alien-enemy investigations:
The Service shall conduct a full investigation of any alien enemy whose application for naturalization is pending upon declaration of war or at any time thereafter. This investigation may take place either prior to or after the examination on the application. This investigation shall encompass, but not be limited to, the applicant’s loyalty to the United States and attachment to the country, state, or sovereignty with which the United States is at war.
8 C.F.R. § 331.3.
Also of note, beginning in fiscal year 1998, Congress mandated that the Federal Bureau of Investigation (FBI) complete a criminal background check on naturalization applicants before the CIS decides whether to grant or deny a respective application. See Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub.L. 105-119, 111 Stat. 2448-49 (November 26, 1997) (cited in Historical and Statutory Notes to 8 U.S.C. § 1446). In this same vein, pursuant to an implementing federal regulation, the CIS “will notify applicants for naturalization to appear before a [CIS] officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.” 8 C.F.R. § 335.2(b). In other words, the CIS, by this regulation, is directed not to conduct a § 1446(b) examination of a naturalization applicant, until the FBI has completed a full criminal background check on the applicant.
Pursuant to 8 U.S.C. § 1447(a), if the Attorney General, through the CIS, denies an alien’s application for naturalization, the alien has the right to request a review hearing before an immigration officer.[2] Pursuant to 8 U.S.C. § 1421(c), if such immigration officer ultimately denies the application, the alien has the right to seek de novo judicial review of his application *391 for naturalization in the district court for the district in which the alien resides.[3]
Turning to the section of the Immigration Act of 1990 directly at issue in the present appeal, Title IV, § 407(d)(14), 104 Stat. 5044, codified at 8 U.S.C. § 1447(b), such section authorizes an applicant for naturalization to apply for a hearing on the merits of his application in the district court for the district in which the alien resides if the Attorney General fails to make a determination on such application within 120 days after conducting a § 1446(b) examination. Specifically, 8 U.S.C. § 1447(b) provides:
(b) Request for hearing before district court
If there is a failure to make a determination under section 1446 of this title [on an application for naturalization] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.
Id. § 1447(b).
II.
Properly framed, the overarching issue presented in this consolidated appeal is whether a naturalization applicant’s proper filing of a § 1447(b) petition, in district court, for a hearing on the merits of his naturalization application, immediately and automatically divests the Attorney General of the authority the Immigration Act of 1990 statutorily conferred upon him to grant or deny applications for naturalization. With all due respect to the majority opinion’s holding to the contrary, the language of the relevant statutory provisions, the specific context in which the language is used, and the broader context of the Immigration Act of 1990 as a whole, compel an answer in the negative.
“The first step in determining the meaning of a statute is to examine the statute’s plain language. In doing so, we look at ‘the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.’” Andrews v. United States, 441 F.3d 220, 222 (4th Cir.2006) (internal citation omitted) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If the plain language of the statute itself answers the question, we must enforce the statute as written, without resorting to consideration of the statute’s legislative history. Patterson v. Shumate, 504 U.S. 753, 759, 761, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (plain language of Code is determinative; turn to legislative history only when statute is ambiguous). If the statutory language at issue is ambiguous, courts “appropriately may refer to a statute’s legislative history to resolve statutory ambiguity.” Toibb v. Radloff, 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).
*392 To properly analyze the statutory construction question before us, we must first consider the plain language of 8 U.S.C. § 1421(a), which is the statutory provision in which Congress transferred “[t]he sole authority to naturalize persons as citizens of the United States” from the district courts to “the Attorney General.” Id. (emphasis added). Congress effected such transfer (and in such bold terms) in response to the tremendous backlog of naturalization cases pending in the district courts and provided that such transfer become effective October 1, 1991. Immigration Act of 1990, Pub.L. No. 101-649, Title IV, § 408(a)(1), 104 Stat. 5047. Concomitant with this landmark transfer of authority to decide naturalization applications, Congress provided that naturalization applications “shall be on a form prescribed by the Attorney General and shall include averments of all facts which in the opinion of the Attorney General may be material to the applicant’s naturalization,” 8 U.S.C. § 1445(a), and “shall be filed in the office of the Attorney General,”[4] id. § 1445(d). Moreover, acknowledging the expertise of what is now the CIS in immigration and naturalization matters, Congress decisively charged employees of CIS (or an employee of the United States designated by the Attorney General) with the job of personally investigating naturalization applicants “in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization.” Id. § 1446(a). For the same expertise-laden reason, Congress ordered that “[t]he Attorney General shall designate an employee! ] of the [CIS] to conduct [an] examination!] upon [an] application! ] for naturalization,” id. § 1446(b), and the same employee who conducted the examination shall be the one to grant or deny the application “with reasons therefor,” id. § 1446(d). Furthermore, pursuant to federal regulation, the CIS is charged with conducting alien-enemy investigations when necessary. 8 C.F.R. § 331.3.
As just set forth, the plain language of these quoted statutory sections makes abundantly clear that Congress fervently believed the Attorney General, through the employees of the CIS, who possess unique expertise in the field of immigration and naturalization, is in the best position to decide naturalization applications. It is in the context of this undeniable premise and the equally undeniable premise that Congress, via the Immigration Act of 1990, changed the naturalization process from a judicial one to an administrative one because of the tremendous backlog of naturalization applications in the district courts, that we should consider the meaning in 8 U.S.C. § 1447(b) of the following language: “[A district court with a properly pending § 1447(b) petition before it] has jurisdiction over the matter and may either determine the matter or remand the *393 matter, with appropriate instructions, to the [CIS] to determine the matter.” Id.
I agree with the majority that Congress included § 1447(b) in the Immigration Act of 1990 “to ensure that applicants had judicial recourse when the CIS failed to act.” Ante at 386. However, I cannot agree that this language either explicitly or implicitly strips the CIS of its authority to decide a naturalization application which had been pending before it,- but which had not been decided within the 120-day period after the date of the CIS’s § 1446(b) examination.
Certainly, the statutory grant of jurisdiction to district courts to “determine the matter” ensures that naturalization applicants have judicial recourse when the CIS fails to act. Moreover, the statutory grant of authority to district courts to alternatively “remand the matter, with appropriate instructions to the [CIS] to determine the matter,” id. § 1447(b), gives a district court flexibility in how best to effectuate Congress’ intent in enacting the Immigration Act of 1990 to shorten the time it takes a naturalization applicant to obtain a decision. For example, a district court may believe that a remand to the CIS with instructions to decide the matter within a specified time period, for example thirty days, would best effectuate this purpose.
None of this means, however, that the Attorney General, through the CIS,' is stripped of his statutorily conferred authority, based upon unique expertise in immigration and naturalization matters, to determine naturalization applications. In the words of the district court below, “[n]othing in the statute strips CIS of its jurisdiction where more than 120 days has elapsed since a naturalization examination, CIS has not rendered a decision, and the applicant has filed a claim in district court pursuant to § 1447(b).” (J.A. 400). Rather, the language of § 1447(b) itself, the specific context in which that language is used, and the broader context of the statute as a whole, see Andrews, 441 F.3d at 222, compels the conclusion that § 1447(b) does nothing more than grant district courts the authority to either decide naturalization applications pending more than 120 days following the CIS’s § 1446(b) examination or remand to the CIS with instructions to determine the matter in order to avoid unreasonable delay. The potential escape hatch from delay in the administrative processing of naturalization applications provided by § 1447(b). is just that — a mechanism to spur the CIS to decide naturalization applications or risk such applications being decided outside the agency. Once the CIS has decided a naturalization application pending before the district court on a § 1447(b) petition, the reason for the § 1447(b) petition, to avoid unreasonable delay in obtaining a decision, is moot. As will be discussed more fully below, in the absence of a live case or controversy, the district court is deprived of subject matter jurisdiction and must dismiss the § 1447(b) petition as the district court did in the cases at hand.
Also noteworthy is the fact that reading § 1447(b) as providing the district court with concurrent jurisdiction to decide naturalization applications fully supports Congress’ delay-eliminating-purpose of § 1447(b). Specifically, if the CIS has the authority to decide a naturalization application while such application is pending before the district court pursuant to a properly filed § 1447(b) petition and so decides the application prior to the district court deciding the matter or remanding, the administrative process is properly put back on track. In the case of an application grant, the applicant has obtained the relief he sought and the district court case goes away. In the case of an application *394 denial, the application is simply channeled back through the congressionally designed administrative process, which allows a review hearing before an immigration officer, 8 U.S.C. § 1447(a), and then ultimately, if the denial continues, de novo review before the district court on a fully developed administrative record, id. § 1421(c).
The superior efficiency of de novo district court review on a fully developed administrative record, pursuant to § 1421(c), as compared to initial review by the district court on perhaps no record at all or an incomplete administrative record, pursuant to § 1447(b), is obvious. In the case of a § 1447(b) petition, the district court may well be required to expend its already strained judicial resources to complete an investigation of a naturalization applicant in line with the investigatory requirements of § 1446(a), an exercise, for practical and budgetary reasons it is ill equipped to perform. Indeed, a serious flaw in the majority opinion’s jurisdiction-stripping analysis is the complete failure of such analysis to recognize the CIS’s significant expertise in the field of naturalization to include the necessary resources and manpower to ensure compliance with the requirements of § 1446(a), which section requires “a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization.”[5] Id. § 1446(a). Furthermore, added to the superior-efficiency-benefit of concurrent jurisdiction, is the not-to-be-overiooked fact that, at the end of the administrative process, a naturalization applicant still has the option for de novo review by the district court, of his naturalization application. Id. § 1421(c).
The majority’s position that reading § 1447(b) as providing concurrent jurisdiction to decide naturalization applications impermissibly strips district courts of subject matter jurisdiction and renders § 1447(b)’s remand-with-instructions-authority meaningless misses the mark by far. First, the majority’s framing of the issue before us to ask whether the CIS’s grant or denial of a naturalization application strips . the district court of its § 1447(b) jurisdiction to decide the same naturalization application completely ignores CIS’s congressionally bestowed authority, based upon its unique expertise in immigration and naturalization matters, to grant or deny naturalization applications. Second, nothing short of Article III, § 2 of the United States Constitution strips a district court of subject matter jurisdiction over a § 1447(b) petition, not the grant or denial of a naturalization application by the CIS. Article III, § 2 provides federal courts with jurisdiction only over “cases” and “controversies.” U.S. Const. Art. Ill, § 2. Thus, as a matter of constitutional law, district courts possess § 1447(b) authority to grant or deny a naturalization application and § 1447(b) remand authori *395 ty as long as the § 1447(b) petition before it presents a live case or controversy as contemplated by Article III, § 2, for “it is well settled that federal courts may act only in the context of a justiciable case or controversy.” Benton v. Maryland, 395 U.S. 784, 788, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
In Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the Supreme Court reiterated that the Constitution’s case-or-controversy limitation on federal judicial jurisdiction underpins the doctrine of mootness. Id. at 180, 120 S.Ct. 693. A case is moot when circumstances change during litigation such that there is no longer any case or controversy as contemplated by the Constitution’s Article III, § 2. In the same opinion, the Supreme Court reaffirmed the standard for determining whether a case has been mooted by the defendant’s voluntary conduct: “ ‘A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.’” Id. at 189, 120 S.Ct. 693 (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). Here, the CIS’s action in denying the appellants’ respective naturalization applications unquestionably mooted their respective § 1447(b) petitions given that the allegedly wrongful behavior by the CIS — i.e., CIS’s failure to decide the appellants’ respective naturalization applications within 120-days of their respective § 1446(b) examinations — could not reasonably be expected to recur. Once the CIS has denied the applications, they are denied and the administrative process proceeds. Thus, it was Article III, § 2, not the action of the CIS in denying the appellants’ naturalization applications, which stripped the district court in the present cases of subject matter jurisdiction.
Moving on to address the majority opinion’s discussion of Brock v. Pierce County, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), in accord with the district court, I believe Brock supports not cuts against reading § 1447(b) as providing concurrent jurisdiction. As we stated in Holland v. Pardee Coal Co., 269 F.3d 424 (4th Cir.2001), “[i]n its Brock decision, the Supreme Court pronounced that a statutory provision that an agency ‘shall’ perform certain functions within a prescribed period ‘does not, standing alone, divest the [agency] of jurisdiction to act after that time.’ ” Id. at 431 (quoting Brock, 476 U.S. at 266, 106 S.Ct. 1834). We noted that “[t]he Court expressed its reluctance to view ‘every failure of an agency to observe a procedural requirement [as] voiding] subsequent agency action, especially when important public rights are at stake.’ ” Id. (alteration in original) (quoting Brock, 476 U.S. at 260, 106 S.Ct. 1834). In Holland, we went on to quote the following passage from United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339 (4th Cir.1994) as “illuminating” circuit precedent regarding the proper application of Brock:
[W]here a statutory deadline requiring that the government “shall” take certain action within a particular time frame fails to specify the consequences of the government’s failure to comply with that deadline, courts should not assume from the statute’s mandatory language itself that a jurisdictional requirement was intended, if a remedy for the government’s noncompliance less drastic than dismissal is available. Rather, in such a context, they should examine the “normal indicia of congressional intent,” to determine whether Congress meant the provision to be jurisdictional.
Holland, 269 F.3d at 431 (quoting United States ex rel. Siller, 21 F.3d at 1344).
*396 From these instructions, it follows that if Congress pairs a statutory deadline for agency action with a grant of jurisdiction to another as a consequence for failure to meet the deadline, courts should also examine the normal indicia of congressional intent to determine whether Congress meant the provision to be jurisdiction stripping or jurisdiction sharing. Jurisdiction sharing is by far a less drastic consequence in the circumstances of these cases. The logic of Brock and our Fourth Circuit jurisprudence applying Brock strongly suggests that when a statutory deadline for agency action written in mandatory terms is paired with a grant of jurisdiction to another if the agency fails to meet the deadline, courts should not assume that Congress intended a jurisdiction stripping-consequence, especially when, important public rights are at stake. Rather, in such a context courts should examine the normal indicia of congressional intent to determine whether Congress meant the statutory provision to be jurisdiction stripping. As I have already explained, examination of the normal indicia of congressional intent in regard to the statutory question before us clearly and consistently shows intent on the part of Congress to spur the CIS to action, but no intent on the part of Congress that a naturalization applicant’s proper filing of a § 1447(b) petition in district court immediately and automatically divest the Attorney General of the authority the Immigration Act of 1990 statutorily conferred upon him to grant or deny applications for naturalization.
III.
To summarize, the language of § 1447(b) itself, the specific context in which that language is used, and the broader context of the statute as a whole, see Andrews, 441 F.3d at 222, compels the conclusion that § 1447(b) does nothing more than grant district courts the authority to either decide naturalization applications pending more than 120 days following the CIS’s § 1446(b) examination or remand to the CIS with instructions to determine the matter in order to avoid unreasonable delay. In other words, given the plain meaning of § 1447(b), it cannot be said that it strips the Attorney General or the CIS of their authority and jurisdiction to decide a naturalization application simply because an applicant has filed a § 1447(b) petition with the district court. Therefore, the CIS’s action in denying the appellants’ respective naturalization applications mooted their respective pending § 1447(b) petitions and deprived the district court of subject matter jurisdiction in each instance. Accordingly, I am constrained to dissent from the majority opinion’s disposition reversing the district court’s respective dismissals of the appellants’ § 1447(b) petitions and remanding for further proceedings. Without hesitation, I would affirm the district court’s dismissal, for lack of subject matter jurisdiction, of Etape’s case.
With respect to Rahim, I would ultimately grant the government’s motion to dismiss as moot Rahim’s appeal of the district court’s dismissal of her § 1447(b) petition. Following the CIS’s denial of her naturalization application and while this appeal was pending, Rahim continued to pursue her administrative remedies to include filing a § 1421(c) action for de novo review of her naturalization application in the district court. Dismissal of Rahim’s appeal is appropriate since exhaustion of her administrative remedies has afforded her the very relief that she seeks in the present appeal, ie., the district court’s ability to consider the merits of her naturalization application de novo.
In short, I would affirm the district court’s dismissal of Etape’s § 1447(b) petition for lack of subject matter jurisdiction *397 and grant the government’s motion to dismiss Rahim’s appeal as moot.

. Pursuant to the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2125, the INS was divided into two different bureaus under the Department of Homeland Security: the Bureau of Immigration and Customs Enforcement and the Bureau of Citizenship and Immigration Services (CIS). Chan, 464 F.3d at 290. CIS processes applications for United States citizenship. Id.

. Specifically, 8 U.S.C. § 1447(a) provides:
(a) Request for hearing before immigration officer
If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer.

Id.

. Specifically, 8 U.S.C. § 1421(c) provides:
(c) Judicial review
A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

Id.

. The sole exception to this filing rule is found in 8 U.S.C. § 1445(e), which provides as follows:
(e) Substitute filing place and administering oath other than before Attorney General
A person may file an application for naturalization other than in the office of the Attorney General, and an oath of allegiance administered other than in a public ceremony before the Attorney General or a court, if the Attorney General determines that the person has an illness or other disability which—
(1) is of a permanent nature and is sufficiently serious to prevent the person’s personal appearance, or
(2) is of a nature which so incapacitates the person as to prevent him from personally appearing.
Id. This exception has no relevance to the statutory construction issue at hand.

. Indeed, the federal administrative regulation elucidating the requirements of the § 1446(a) investigation provides:
Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and [where the applicant] has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application.
8 C.F.R. § 335.1. The same regulation allows the district director to waive the neighborhood investigation portion. Id.