**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2812
_____

ASSEM ABULKHAIR,
                                        Appellant

v.

GEORGE W. BUSH, President of the United States, individually and in his capacity as
President of the United States of America; MICHAEL B. MUKASEY, individually and
in his capacity as Attorney General of the United States; MICHAEL CHERTOFF,
individually and his capacity as Secretary, Department of Homeland Security; UNITED
STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOHN THOMPSON,
individually and in his capacity as District Director U.S. Citizenship & Immigration
Services; EMILIO GONZALEZ, individually and in his capacity as Director U.S.
Citizenship & Immigration Services; ROBERT S. MUELLER, III, individually and in his
capacity as Director, Federal Bureau of Investigation; MICHAEL HAYDEN,
individually and in his capacity as Director, Central Intelligence Agency;
THE UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 08-cv-05410)
District Judge: Honorable Dennis M. Cavanaugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 20, 2011

Before: AMBRO, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 9, 2011)

_____

OPINION

_____

PER CURIAM

Assem Abulkhair, proceeding pro se, appeals from the district court's order granting the defendants' motions for summary judgment and to dismiss his amended complaint. We will affirm.

## I.

Abulkhair is a native and citizen of Egypt who entered the United States as a visitor in 1987. Effective February 13, 1997, he was granted status as a Lawful Permanent Resident. He filed a Form N-400 Application for Naturalization on November 29, 2001. Eligibility for naturalization requires the applicant to demonstrate that he or she has: (1) resided continuously in the United States for at least five years after being lawfully admitted for permanent residence; (2) maintained physical presence for at least half of the five years immediately preceding the application date; (3) resided in the United States from the date of the application to the time of admission to citizenship, and (4) established and maintained good moral character. 8 U.S.C. § 1427(a).

Abulkhair's application stated that he had resided in Paterson, New Jersey, from October 1989 through March 20, 2000, and that he resided in Passaic, New Jersey, from March 2000 through the date of the application. He asserted that that he had been

2

employed with PPI/Time Zero from December 28, 2000 through July 23, 2001, and that he was employed at Passaic Employment Services from May 2002 through the date of the application. He also stated that the only time he has traveled outside the United States was from December 9, 1998 through February 17, 1999, when he visited family in Egypt.

The United States Citizenship and Immigration Services ("USCIS") interviewed Abulkhair on October 16, 2002. It did not, however, adjudicate his application at that time. Rather, it requested that Abulkhair provide the following documentation: (1) his Egyptian passport or an affidavit from the Egyptian Consulate stating that it had retained the passport, as he had asserted during his interview; (2) his original United States Re-Entry Permit; (3) proof of residence since 1996; (4) police/arrest records; and (5) original or certified court disposition records. The request form noted that photocopies of the requested documents were not acceptable, and that the "non-existence or other unavailability of required evidence creates a presumption of ineligibility." It also stated that if the requested documents could not be obtained, the applicant "must demonstrate this and submit secondary evidence, such as church or school records, pertinent to the facts at issue. If secondary evidence . . . cannot be obtained, the applicant . . . must demonstrate [this] . . . and submit two or more affidavits, sworn to or affirmed by persons who are not parties to the petition who have direct personal knowledge. . . . [A]ffidavits must overcome the unavailability of both primary and secondary evidence."

In a November 6, 2002 letter to the USCIS, Abulkhair stated that he was attempting to comply with the document requests, submitting: (1) a letter that he had sent

3

to the Egyptian Consulate; (2) a partial copy of his expired Egyptian passport; (3) an affidavit (prepared by him) stating that the original Re-Entry Permit "no longer exist[ed];" (4) a letter from the Municipal Court of Garfield, New Jersey regarding 1991 and 1992 court proceedings; and (5) copies of additional court proceedings.

On December 31, 2002, the USCIS denied Abulkhair's application, determining that he was ineligible for naturalization because he had failed to submit proof of his continuous residence and presence in the United States during the previous five years and because he had failed to prosecute the application by not providing the required documentation. Thereafter, Abulkhair requested an administrative hearing pursuant to 8 U.S.C. § 1447(a).

On July 18, 2003, at Abulkhair's subsequent interview, the USCIS requested that, within thirty days, he submit "proof that he had paid income taxes to the IRS from 1996 to 2001 (I-1722)" and "copies of cancelled checks from 1996 to the present." The request form stated that his application could not be acted upon until he submitted the requested documentation. Abulkhair did not, however, fully comply with the request. It appears that he did submit some documents indicating that he filed income tax returns for at least part of the relevant time period. He also submitted copies of cancelled checks made out to a utility company and a copy of a 2003 gas bill for service at a Passaic, New Jersey address. All of these documents listed Abulkhair's address as a Post Office Box in Clifton, New Jersey.

In the following years, Abulkhair made several requests to the USCIS for updates

4

as to the status of his application.  The USCIS responded that his application could not be adjudicated due to outstanding security/background checks.  Then, on September 15, 2008, the USCIS issued a final denial of Abulkhair's application for naturalization.  It found that his application was deficient for the following reasons: (1) he failed to provide a passport or re-entry permit showing his travel outside the United States; (2) he failed to properly respond to USCIS's request for income tax information; and (3) the file showed that he did not provide original or certified court dispositions for his arrests.

Abulkhair then filed a complaint in the United States District Court for the District of New Jersey pursuant to 8 U.S.C. § 1447(b) challenging the USCIS's delay in adjudicating his application.  On December 19, 2008, the district court dismissed the complaint, determining, among other things, that his claims regarding the delay in adjudication were moot.[1]  Abulkhair thereafter filed a motion for reconsideration, informing the district court that he was seeking judicial review of the denial of his application pursuant to 8 U.S.C. § 1421(c).  The district court granted the motion and

---

[1] We note that, to the extent that Abulkhair attempts to claim that the delay in processing his application for naturalization violated 8 U.S.C. § 1447, the district court correctly determined that any such claim is moot.  (*See* D.N.J. Civ. No. 08-cv-5410, Dkt. No. 3 (Dec. 19, 2008).)  The statute gives the district court jurisdiction over an application for naturalization if the USCIS fails to make a determination on the application within a certain time period.  8 U.S.C. § 1447(b).  The district court "may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." *Id.*  Here, the USCIS's determination of Abulkhair's application, while untimely, occurred before Abulkhair filed his complaint in the district court.  Accordingly, a live controversy concerning the determination of the application—the subject matter of Section 1447—did not exist and the claim was moot.  *See Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) (explaining the live controversy requirement).

reopened the case.

On May 14, 2009, Abulkhair filed an amended complaint seeking monetary damages for alleged violations of his constitutional rights, as well as review of the USCIS's denial of his application for naturalization. All of his claims are premised on his assertion that his application was denied because he is a "Moslem living in the U.S." The defendants filed a motion to dismiss as to Abulkhair's claims for monetary damages as well as a motion for summary judgment as to his claim regarding the decision to deny his application. The district court granted the defendants' motions. Abulkhair now appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the district court's decisions on motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6), and for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g., Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *DiGiacomo v. Teamsters Trust Pension Fund*, 420 F.3d 220, 222 n.4 (3d Cir. 2005); *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 293 (3d Cir. 2008).

**A.    Dismissal under Federal Rule of Civil Procedure 12(b)(1)**

Abulkhair seeks monetary damages from the United States, the USCIS, and the individual federal defendants in their official capacities for violating his constitutional rights by denying his naturalization application, allegedly due to his religion. The district court appropriately considered, and then rejected, the Federal Tort Claims Act ("FTCA")

6

as providing a cause of action for this assertion. The FTCA provides a limited exception to the United States' immunity from suit for certain tort claims. *See* 28 U.S.C. §§ 1346(b), 2671-80. However, to proceed on an FTCA claim in federal court, the claimant "shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Failing to follow this procedure deprives federal courts of subject matter jurisdiction. *White-Squire v. USPS*, 592 F.3d 453, 456-58 (3d Cir. 2010). Additionally, because the FTCA is a waiver of sovereign immunity by the United States, its requirements are strictly construed. *Id.* at 456. The defendants moved to dismiss Abulkhair's FTCA claim based on, among other things, his failure to exhaust administrative remedies.

We agree that Abulkhair's claim, to the extent that it implicated the FTCA, was properly dismissed under Rule 12(b)(1). Abulkhair has not filed an administrative tort claim with the USCIS, or any federal agency, and therefore did not exhaust his administrative remedies before filing suit.[2]

**B.     Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

Abulkhair also named officials in their individual capacities as defendants, asserting that they violated his constitutional rights pursuant to a policy of discriminating against Muslims who apply for naturalization. The district court appropriately considered

---

[2] Abulkhair's argument that he was not required to exhaust his administrative remedies is meritless. Because we affirm based on the Abulkhair's failure to exhaust his administrative remedies, we do not consider the other bases for the district court's dismissal of this claim.

7

these assertions as claims brought under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* allows a plaintiff to bring a claim against federal officers acting under color of law for violations of that individual's constitutional rights. *Id.* at 397. However, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1948 (2009).

The defendants moved to dismiss Abulkhair's *Bivens* claims based on, among other things, his failure to allege any facts that the named federal defendants were personally involved in the alleged violations of his constitutional rights. We agree with the district court that Abulkhair failed to sufficiently plead a claim against any defendant under *Bivens.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, to state a *Bivens* claim based on alleged unconstitutional discrimination, the petitioner "must plead sufficient factual matter to show that [a defendant] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 1948-49.

8

Abulkhair did not make specific claims against any of the named defendants.[3] Rather, reading the complaint liberally, he appears to be asserting that the defendants adopted an unconstitutional policy of discrimination against Muslim applicants for naturalization. As in *Iqbal*, Abulkhair's conclusory assertions against the federal officials have not "nudged [his] claims of invidious discrimination across the line from conceivable to plausible," so as to be entitled to a presumption of truth, as is required to survive a motion to dismiss. *Id.* at 1950-51 (internal quotations omitted) (alteration in original). Accordingly, the district court appropriately dismissed these claims under Rule 12(b)(6).

**C.    Summary Judgment under Federal Rule of Civil Procedure 56(c)**

Abulkhair also appeals from the district court's decision granting the defendants' motion for summary judgment as to his claim that the USCIS erred by denying his application for naturalization. *See* 8 U.S.C. § 1421(c).[4] Under Section 1421(c), the

---

[3] The individual federal defendants are: George W. Bush, former President of the United States; Michael Mukasey, former Attorney General of the United States; Michael Chertoff, former Secretary of the Department of Homeland Security; Robert S. Mueller, III, Director of the Federal Bureau of Investigation; Michael V. Hayden, former Director of the Central Intelligence Agency; Emilio T. Gonzalez, former director of the USCIS; and John Thompson, District Director of the USCIS, Newark Service Center.

[4] Section 1421(c) also requires the district court, "at the request of the petitioner, [to] conduct a hearing de novo." Abulkhair contends that this precludes the district court from deciding the case on a Rule 56 motion for summary judgment without oral argument. However, the Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not set forth in federal statutes and has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(3). The Second Circuit has noted that application of the Federal Rules of

district court is required to review the denial of naturalization de novo and to "make its own findings of fact and conclusions of law." Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

An applicant for naturalization has the burden of establishing "by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b). "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). Upon filing an application for naturalization, the USCIS conducts a background investigation, including a review of all pertinent immigration and police records. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. Next, the applicant is interviewed and is also subject to an "examination" that may include testimony of witnesses in addition to the applicant and production of relevant books, papers, and documents. 8 U.S.C. § 1446(b). Upon completion of the examination and all background checks, the USCIS adjudicates the application. Here, the USCIS denied Abulkhair's application because he failed to demonstrate proof of presence/residence and because he failed to prosecute his application.

---

Civil Procedure is "the norm under the current naturalization provision … and was the norm under the prior law." *Chan v. Gantner*, 464 F.3d 289, 296 (2d Cir. 2006) (citations omitted). It then determined that the Rule 56 process provides the "the hearing required by section 1421(c)." *Id.* at 295-96. We agree. Under the circumstances of this case, the district court did not err by failing to hold oral argument before deciding the summary judgment motion.

As stated above, Abulkhair was required to establish that he had resided continuously in the United States for five years after being lawfully admitted for permanent residence, and that he had maintained "physical presence" in the United States for half of the five years immediately preceding the application date. *See* 8 U.S.C. § 1427(a). Accordingly, he had to establish residence and presence in the United States from February 1997 through November 2001. The term "residence," for purposes of determining eligibility for naturalization, is the same as the applicant's "domicile, or principal actual dwelling place, without regard to … intent." 8 C.F.R. § 316.5(a); *see also* 8 U.S.C. § 1101(a)(33).

Abulkhair's application stated that he resided in Paterson, New Jersey, from October 1, 1989 to March 20, 2000, and that he has resided in Passaic, New Jersey, from March 20, 2000 to the date of the application. In response to the USCIS's requests for documents, he provided some cancelled checks, a copy of a 2003 gas bill, some indication that he had filed some federal income tax returns, and various other documents. However, as the district court determined, these documents did little to establish that Abulkhair actually resided in Paterson or Passaic because every document listed his mailing address as a Post Office Box in Clifton, New Jersey. It was thus not error for the district court to conclude that Abulkhair had not met his burden of establishing that he met the continuous residence/physical presence requirements. Further, even if Abulkhair was unable to obtain the documents that the USCIS requested, there is no indication that he attempted to follow the procedures as outlined by the USCIS

11

for submitting secondary documents or affidavits to "overcome the unavailability of both primary and secondary evidence."

For the foregoing reasons, the district court appropriately granted the defendants' motions to dismiss and for summary judgment. We will affirm the judgment of the district court.[5]

---

[5] We have considered Abulkhair's remaining arguments and have determined that they lack sufficient merit.